UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

### Case Number:  14-20321-CIV-MORENO

ANGELIQUE HENDERSON,

      Plaintiff,

vs.

DADE   COUNTY   POLICE   BENEVOLENT
ASSOCIATION, INC.,

      Defendant.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART
## MOTION TO DISMISS SECOND AMENDED COMPLAINT

Plaintiff Angelique Henderson, an African-American, female sergeant with the Miami-Dade

Police Department, filed a lawsuit against Defendant Dade County Police Benevolent Association

(the "PBA"), alleging discrimination and retaliation.  Plaintiff's Second Amended Complaint asserts

ten counts of discrimination based on race, sex and national origin, as well as retaliation for protected

activity, brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000, et

seq., the Florida Civil Rights Act, Fla. Stat. § 760.01, et seq., and 42 U.S.C. § 1981.

For the reasons provided below, the Court finds that Defendant PBA's Motion to Dismiss

Second Amended Complaint is granted in part and denied in part.  The Motion to Dismiss is granted

as to Counts I, II, III, V, VI, VII and IX, and denied as to Counts IV, VIII and X.  Plaintiff is granted

leave to amend the dismissed claims.  A Third Amended Complaint must be filed no later than **July

24, 2014** if Plaintiff chooses to continue to allege those counts.  Defendant shall answer or respond

to the remaining claims, and to any amended claims in a Third Amended Complaint if filed, by

**August 11, 2014**.    Furthermore, in accordance with the Court's Scheduling Order, issued

simultaneously with the instant Order, this case is set for trial for the two-week period commencing

**February 23, 2015**.

## I. Plaintiff's Factual Allegations

In 2009, Plaintiff took the Miami-Dade County police lieutenant's exam and placed 6th out of 62 applicants, which made her the highest ranking black female candidate on the 2009 promotional list. In September 2010, Plaintiff complained to the PBA that no sergeants from the 2009 List were being promoted to fill the various promotional vacancies, and therefore her contractual rights were being violated, but according to her the PBA refused to do anything about her complaints.

Plaintiff then met with PBA attorney Andrew Axelrad to ask for his assistance in extending the 2009 List's effective period. Mr. Axelrad refused, stating it "could cause all kinds of grievances and lawsuits." In February 2011, Plaintiff again met with Mr. Axelrad and complained about the County's failure to fill promotional vacancies, during which meeting Plaintiff gave documents to Mr. Axelrad that showed a Hispanic male, Amado Ojeda, was promoted to lieutenant on December 13, 2009, despite the fact that Ojeda did not qualify on the 2009 List. Mr. Axelrad refused to consider Plaintiff's documents.

On November 17, 2011, almost two years after the 2009 List became effective and less than a month before it was scheduled to expire, the PBA filed a grievance alleging that the County failed to promote personnel to the rank of lieutenant as required by the 2008 Collective Bargaining Agreement. The PBA then filed a grievance in February 2012 - nine weeks after the 2011 List became effective - similarly alleging failure to promote personnel to the rank of lieutenant as required under the 2011 Collective Bargaining Agreement.

On December 8, 2011, three weeks after the PBA filed a grievance for the 2009 List, the 2009 List expired. Plaintiff believed, however, that her promotional rights were being protected in good

faith by the PBA.  On June 25, 2012, the PBA sent an email to Plaintiff and others, stating in part:

> As some of you have received by now, the new promotional list is out announcing promotions to the ranks of Chief, Major, Lieutenant and Sergeant.  We congratulate all those who were promoted and have no doubt that it is well-deserved and warranted.  For those who were on the "old" list and were not promoted, the PBA still has a grievance pending and will continue to go forth with that grievance and proceed with the hearing.  It is the PBA's position that what is right is right - if the positions existed at the time the old list expired then the PBA feels they should have been filled out from the old list[.]

On August 2, 2012, the PBA issued notice that an arbitration hearing regarding the 2009 List grievance had been scheduled for October 26, 2012.  On October 12, 2012, Plaintiff attempted to meet with Simone Lopez, an attorney for the PBA, but Ms. Lopez was not in her office.  Plaintiff had brought various documents relevant to the pending grievance, including documents evidencing existing vacancies where the City claimed none existed.  Plaintiff left copies of the documents with a PBA receptionist, and left a message for Ms. Lopez to call when she returned.

On October 17, 2012, Plaintiff called the PBA's President, John Rivera, and explained that she had provided documents to the PBA that she had gathered through public record requests and otherwise from the County, but the PBA supposedly refused to review or use them in support of its case. Mr. Rivera's response was that the PBA had its "top attorney" handling the matter, and in the Plaintiff's view was "blowing off" Plaintiff and the evidence she was attempting to offer in support of the grievance.

On October 25, 2012, Plaintiff contacted Ms. Lopez and was told that the County had agreed to settle the grievance by promoting four lieutenants.  Recognizing that this deal could exclude her - despite allegedly having provided evidence from which it could be concluded that there were ten or more lieutenant vacancies - Plaintiff pointed out to Ms. Lopez that the settlement would exclude her, the highest ranking black female on the 2009 List.  Ms. Lopez responded that it did not matter and she

would not fight to get plaintiff promoted "just because" plaintiff was the "highest ranking black female."

On October 26, 2012, Plaintiff, without the assistance of counsel, filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), alleging that the PBA discriminated against her on the basis of race, gender, and national origin.  On November 26, 2012, Plaintiff emailed PBA President John Rivera and complained that the handling of the 2009 List promotional process had been discriminatory toward black females and that the PBA's attorneys had ignored her concerns and grievances.  Plaintiff in her email included references to discrimination provisions from Chapter 11A of Miami-Dade County's Code of Ordinances, and Administrative Order No.7-6 - Personnel Policy on Equal Employment Opportunity Promotion and Training.  Plaintiff expressed concerns that the PBA had supported discriminatory practices by the Miami-Dade Police Department.  Mr. Rivera never responded.

On November 30, 2012, the PBA entered an agreement with Miami-Dade County to settle the pending grievance relating to the 2009 List in exchange for, among other things, the County making three sergeant-to-lieutenant promotions from the 2009 List.  Each of the three promotions went to Hispanic males.  Also on November 30, 2012, the PBA agreed to extend the 2011 List an additional year.  In so doing, Plaintiff - who is not on the 2011 List - could not be promoted from the 2009 List, and would have to wait an additional year before having an opportunity to again qualify for promotion.  On December 4, 2012, Plaintiff, without the assistance of counsel, filed an amended Charge of Discrimination with the Equal Employment Opportunity Commission, adding retaliation to her previously filed charge.

On May 14, 2013, after Plaintiff compiled additional documents from public records

requests, she emailed PBA President John Rivera and PBA executive board members, asking for representation during an upcoming meeting with Director Patterson of the Miami-Dade Police Department. Plaintiff advised that she wanted to present evidence to the PBA and Director Patterson regarding how the promotional process was handled during 2010 and 2011, and she asked for the PBA's "assistance and legal representation." The PBA's counsel, Mr. Axelrad, denied Plaintiff's request for help and did not review Plaintiff's evidence. On June 19, 2013, Plaintiff met with Director Patterson with no assistance or representation.

## II. Standard of Review

Under Rule 8, a plaintiff must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and assume the veracity of well-pleaded factual allegations. *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). However, this tenet does not apply to legal conclusions, and such conclusions "must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Though a proper complaint "does not need detailed factual allegations," it must contain "more than labels and conclusions, and a formulaic recitation of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2008).

## III. Legal Analysis

Defendant filed a Motion to Dismiss Second Amended Complaint, arguing the complaint should be dismissed for several reasons. *First*, the allegations in the Second Amended Complaint go far beyond the scope of the original and amended charges of discrimination filed with the Equal Employment Opportunity Commission, and therefore do not reasonably relate to the actions

complained of in the charges. *Second*, Plaintiff has failed to demonstrate the PBA discriminated against Plaintiff on the basis of race, gender or national origin, and similarly has failed to allege any discriminatory acts committed by the PBA which are actionable, and therefore cannot allege violations of Title VII of the Civil Rights Act, the Florida Civil Rights Act, or § 1981. *Third*, Plaintiff has failed to demonstrate that the PBA retaliated against Plaintiff in violation of Title VII, the Florida Civil Rights Act, or § 1981. The Court will address each of these arguments in turn.

**A. The Court Has Subject Matter Jurisdiction Over Plaintiff's Claims Where the Allegations in the Second Amended Complaint Reasonably Relate to the Original and Amended Charges of Discrimination Filed with the Equal Employment Opportunity Commission.**

Defendant argues that the Court does not have subject matter jurisdiction over Plaintiff's claims because Plaintiff has not properly exhausted her administrative remedies by filing a charge of discrimination with the Equal Employment Opportunity Commission, and therefore has not satisfied this jurisdictional requirement to filing a complaint under Title VII of the Civil Rights Act. Specifically, Defendant argues that the allegations in Plaintiff's Second Amended Complaint "go far beyond the scope of the EEOC Charge and Amended Charge and are not reasonably related to the solitary act of entering into an agreement with the County to settle the grievance." Defendant also suggests that Plaintiff's retaliation claims are improper as "the amended charge does not even address the actions of the [PBA] as being based on retaliation." The Court disagrees with each of these arguments.

*First*, with respect to Defendant's suggestion that Plaintiff's retaliation claims are improper where the factual allegations in the original and amended charges of discrimination are not based in such a claim, Defendant is correct that a party normally cannot raise charges not contained in its Equal Employment Opportunity Commission charge for the first time in litigation. *See Gregory*, 355

F.3d at 1279-80. However, a recognized exception to this rule allows courts to hear charges not contained in such a charge if those claims allege retaliation against the plaintiff for filing the EEOC charge. *Booth v. Pasco County, Fla.*, 829 F. Supp. 1180, 1194 (M.D. Fla. 2011) (finding where plaintiff alleges he was denied promotion opportunities *after* the filing of his EEOC charge, "the fact that these allegations were not included in his EEOC charge does not prevent the Court from considering them") (emphasis in original).

 *Second*, with respect to Defendant's arguments about the proper scope of Plaintiff's claims, courts have consistently held that the scope of a complaint is generally limited to the scope of the Equal Employment Opportunity Commission investigation which can reasonably be expected to grow out of the charge of discrimination. *Turner v. Orr*, 804 F.2d 1223, 1226 (11th Cir. 1986) (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 566 (5th Cir. 1970). This is not an exacting standard, and courts have broadly interpreted the scope of a plaintiff's EEOC charge to find that allegations in a judicial complaint reasonably relate to the charge of discrimination. *See, e.g.,* *Turner*, 804 F.2d at 1226 ("the scope of the EEOC complaint should not be strictly interpreted"); *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004) ("[T]he allegations in a judicial complaint filed pursuant to Title VII may encompass any kind of discrimination like or related to the allegations contained in the charge.").

 The Court in *Gregory* further noted that judicial claims are allowed if they "amplify, clarify, or more clearly focus" the allegations in the EEOC charge, and that courts are "extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII]." 355 F.3d at 1279-80 (citations omitted). Courts are similarly reluctant to procedurally bar such claims when they stem from charges filed by laymen and without the assistance of counsel. As the Court in *Sanchez* noted,

[Title VII] contemplates the filing of charges by persons untutored in the technicalities of the law and who may not, at that time, be able to fully articulate their grievances or be aware of the full panoply of discriminatory practices against them or others similarly situated. . . . The Commission which must operate on the basis of the administrative charge [] must therefore view the charge in its broadest reasonable sense[.]

431 F.2d at 466-67.

Accordingly, the Court views Plaintiff's original and amended charges of discrimination, filed without the assistance of counsel, broadly to determine whether the allegations in the Second Amended Complaint can reasonably be expected to grow out of those charges. In doing so, the Court finds Plaintiff's claims for discrimination and retaliation can reasonably be expected to grow out of the charge of discrimination. Plaintiff in her original and amended charges of discrimination made factual allegations regarding the collective bargaining provisions, the unfilled promotional vacancies, the County's alleged refusal to fill these vacancies, meetings held at the PBA's workplace regarding those vacancies, and the apparent settlement between the PBA and Miami-Dade County which resulted in Plaintiff not receiving a promotion.[1]  Given these allegations, it is more than reasonable that an ensuing investigation made by the Equal Employment Opportunity Commission would look into the duties and responsibilities of the PBA as a contractually-authorized bargaining unit for police officers such as Plaintiff. It is equally reasonable that an investigation would look into how those duties and responsibilities were administered, particularly with respect to the "promotional vacancies" and a meeting between the PBA and Miami-Dade County to discuss those

---

[1] Two days after Plaintiff filed her amended charge of discrimination, she submitted a written statement alleging additional facts relating to the abovementioned allegations [Attachment to D.E. 26]. While Defendant has not argued that the Court cannot consider the contemporaneous allegations, the Court finds it does not need to.  Under a broad reading of the allegations contained in the original and amended charges of discrimination, filed by a layman without the assistance of counsel, the allegations contained in the Second Amended Complaint can reasonably be expected to grow out of the charges. *Sanchez*, 431 F.2d at 466-67; *Turner*, 804 F.2d at 1226 ("the scope of the EEOC complaint should not be strictly interpreted"); *Gregory*, 355 F.3d at 1279-80 (courts are "extremely reluctant" to procedurally bar claims brought under Title VII) (citations omitted).

vacancies as alleged by Plaintiff in her original and amended charges.

At this stage of litigation, Defendant has focused too narrowly on Plaintiff's original and amended charges of discrimination. For these reasons, Plaintiff has properly exhausted her administrative remedies, and dismissal pursuant to Fed. R. Civ. P. 12(b)(1) is not warranted.

## B. Plaintiff's Claims for Race Discrimination, Gender Discrimination and National Origin Discrimination Against The PBA (Counts I, II, III, V, VI, VII and IX)

Defendant next argues that Plaintiff has failed to state a claim for race, gender and national origin discrimination in violation of Title VII, 42 U.S.C. § 2000, the Florida Civil Rights Act, Fla. Stat. § 760.01(1), and 42 U.S.C. § 1981.

*First*, the Court notes that a labor union, which bears certain duties to its members, may be subject to liability for discrimination if its conduct impairs an employee's ability to enforce his established contract rights through the legal process. *See Booth v. Pasco County, Fla.*, 829 F. Supp. 2d 1180 (M.D. Fla. 2011) (noting defendant union can be liable "if it intentionally failed to process Plaintiffs' complaints because of their protected status"); *Goodman v. Lukens Steel Co.*, 482 U.S. 656 (1987) (superseded by statute on other grounds) ("A union which intentionally avoids asserting discrimination claims, either so as not to antagonize the employer and thus improve its chances of success on other issues, or in deference to the perceived desires of its white membership, is liable under [Title VII]."). Therefore, the allegations in Plaintiff's Second Amended Complaint, stemming from her original and amended charges filed with the Equal Employment Opportunity Commission, implicate interests protected by Title VII, the Florida Civil Rights Act, and § 1981.

*Second*, courts have consistently held that the elements of a prima facie case and the analytical framework for employment discrimination claims made under Title VII, the Florida Civil Rights Act, and § 1981, which are set forth below, are the same. *E.g.*, *Crawford v. Carroll*, 529 F.3d

961, 970 (11th Cir. 2008); *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998); *Telfair v. Federal Exp. Corp.*, 934 F. Supp. 2d 1368, 1373 n.1 (S.D. Fla. 2013). The Court therefore will analyze the claims together.

In an employment discrimination claim, a plaintiff may establish discrimination by providing the Court with either direct or indirect evidence of the alleged discrimination. *Hill v. Metro. Atlanta Rapid Transit Auth.*, 841 F.2d 1533, 1539 (11th Cir. 1988). "Only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004). If the evidence merely suggests, but does not prove, a discriminatory motive, then it is indirect, circumstantial evidence. *Id.*

Plaintiff has failed to set forth any direct evidence of discrimination in support of her claims. The statement made by one of the PBA's attorneys, Simone Lopez, that she would not fight to get Plaintiff promoted "just because" she was the "highest ranking black female," does not rise to the level of "blatant remark[] whose intent could mean nothing other than to discriminate[.]" *Wilson*, 376 F.3d at 1086. Nor do the other statements proffered by Plaintiff in support of her race, gender or national origin discrimination claims. Therefore, the Court will analyze those claims on the basis of indirect, circumstantial evidence.

Where the plaintiff seeks to prove discrimination through indirect, circumstantial evidence, she must do so through the framework provided by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 794 (1973). In *McDonnell Douglas*, the Supreme Court held that to plead a prima facie case of race, gender or national discrimination, the plaintiff must satisfy the following elements: (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees who are not members of the plaintiff's

class more favorably; and (4) she was qualified for the job or job benefit at issue. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 794 (1973); *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836-842-43 (11th Cir. 2000).[2] If the plaintiff satisfies those elements, the burden then shifts to the plaintiff to produce a legitimate, nondiscriminatory reason for the discriminatory action. *McDonnell Douglas*, 411 U.S. at 802-03.

However, the *McDonnell Douglas* framework is an evidentiary standard, not a pleading requirement. *Booth v. Pasco County, Fla.*, 2010 WL 27572, at \*7 (M.D. Fla. July 30, 2010), *citing Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 514 (2002). Thus, "a Title VII complaint need not allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case," but must "provide 'enough factual matter (taken as true) to *suggest*' intentional race discrimination." *Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955, 974 (11th Cir. 2008) (emphasis added) (citation omitted). Therefore, even where a plaintiff satisfies or fails to satisfy the prima facie test, she must provide enough factual matter to suggest intentional race, gender, or national origin discrimination on the part of the defendant.

### i. Plaintiff Has Failed to Sufficiently Plead the Claims for Discrimination Based on Race (Counts I, V, and IX) Against The PBA.

Plaintiff is an African-American and therefore a member of a protected class. Plaintiff alleges she was subject to an adverse employment action committed by the PBA when officials deliberately failed to address or respond to Plaintiff's concerns regarding alleged discriminatory treatment and later entered into a settlement with Miami-Dade County that, in part, extended the

---

[2] Due to an abundance of case law from the Supreme Court, the Eleventh Circuit and the Florida district courts discussing the prima facie elements of a discrimination claim, the Court need not address Plaintiff's citation to a Southern District of California case, *Hills v. Service Employees Intern. Union*, 2011 WL 3667643, at \*9 (S.D. Cal. Aug. 19, 2011).

2011 List an additional year, thereby ensuring Plaintiff would not be promoted and that she would have to wait an additional year before having an opportunity to qualify for promotion. Taking these allegations as true, Plaintiff has sufficiently alleged an adverse action by the PBA. Plaintiff has also sufficiently alleged that she was qualified for the promotion merely due to her placement on the 2009 Promotion List.

Plaintiff has not explicitly addressed the third element regarding whether the PBA has treated similarly situated employees who are not members of the plaintiff's class more favorably. "To show that employees are similarly situated, the plaintiff must establish that the employees are 'similarly situated in all relevant aspects.'" *Daniels v. Hale*, 350 Fed. Appx. 380, 385 (11th Cir. 2004) (quoting *Wilson*, 376 F.3d at 1091). "The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." *Wilson*, 376 F.3d at 1091; *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001).

Plaintiff alleges that the PBA agreed to promote three persons on the 2009 List, all of whom were Hispanic males. Plaintiff also alleges that another Hispanic male, Amado Ojedo, "was promoted to lieutenant on December 13, 2009, despite the fact that Ojeda did not qualify on the 2009 List."

With respect to the three Hispanic males promoted under the PBA's settlement with Miami-Dade County, Plaintiff has not alleged how each is "nearly identical" to the plaintiff, or how they are similarly-situated "in all relevant aspects," other than the mere fact that these three individuals were sergeants placed on the 2009 List. *See Davis*, 516 F.3d at 974 (dismissing claims as conclusory and unsupported where plaintiff failed to allege factual support for the allegation that "plaintiffs were . . . denied and treated differently than similarly situated white employees solely because of [] race"); *see also Scribner v. Collier County*, 2011 WL 2746813, at *4-5 (M.D. Fla. July 14, 2011) (granting

-12-

motion to dismiss where plaintiff's allegations were conclusory in nature and "do not include factual allegations that show that the [comparator] is "similarly situated.""); *Veale v. Florida Dept. of Health*, 2013 WL 5703577, at *4-5 (M.D. Fla. July 29, 2013) (granting motion to dismiss where plaintiff "has simply stated that there were other employees that were similarly situated, outside her protected class, who received more favorable treatment[] without any allegations of specific facts to explain how the disparate treatment occurred[.]").  For example, Plaintiff has not alleged that the three Hispanic males were equally or less qualified than her.  *See Welch v. Mercer University*, 304 Fed. Appx. 834, 837 (11th Cir. 2008) (granting summary judgment where plaintiff "failed to show that any less or equally qualified individuals were promoted ahead of her[.]").  With respect to her claims against the PBA stemming from its alleged failure to adequately grieve, assist or represent the Plaintiff, Plaintiff has similarly failed to describe PBA members outside of her protected class that presented evidence of race discrimination against Miami-Dade County, but for whom the PBA adequately grieved, assisted or represented.

Rather, Plaintiff simply alleges in each count for race discrimination that "all of the new lieutenants were Hispanic males", and the PBA "agreed to Promote only three persons on the 2009 List and to extend the 2011 List to benefit Hispanic males to the exclusion and detriment of black females, including those of Haitian descent."  Such conclusory assertions that Hispanic males on the 2009 List were ultimately promoted to the exclusion of African-American women of Haitian descent, without factual support as to how each was similarly-situated in all relevant aspects to the Plaintiff, are insufficient.

With respect to Amado Ojeda, Plaintiff has similarly failed to allege how Mr. Ojeda is similarly situated.  Indeed, Plaintiff states Mr. Ojeda "did not qualify on the 2009 List."  Without additional

-13-

factual allegations to demonstrate how Mr. Ojeda is similarly-situated to Plaintiff "in all relevant aspects," Mr. Ojeda is an improper comparator. For these reasons, Plaintiff's claims for discrimination based on race are dismissed, and Plaintiff is granted leave to amend.

Assuming arguendo that Plaintiff satisfied the prima facie elements of a claim for race discrimination, these claims still contain a fatal defect. Plaintiff has failed to make sufficient factual allegations, taken as true, to "suggest intentional race discrimination." *Davis*, 516 F.3d at 974.[3] As stated above, Plaintiff's Amended Complaint makes the following allegations:

- "The [PBA] agreed to Promote only three persons on the 2009 List and to extend the 2011 List to benefit Hispanic males to the exclusion and detriment of black females, including those of Haitian descent." [D.E. 23 at ¶¶ 34, 89, 144];
- "Defendant's treatment of plaintiff was motivated by plaintiff's race (black) plus the facts that she was female and/or of Haitian descent[.]" [D.E. 23 at ¶ 35, 90, 145-46 ];
- "The [PBA] delayed its actions and refused to grieve the County's failure to promote . . . for the purpose and with the effect of promoting Hispanic males [] to the exclusion of black females, including those of Haitian descent." [D.E. 23 at ¶ 26, 81, 136]; and
- "The [PBA] refused to consider plaintiff's evidence regarding promotional vacancies for the purpose and with the effect of promoting Hispanic males, including Rafael Rodriguez, George Arango, and Alvaro Ortiz, to the exclusion of black females, including those of Haitian descent, in violation of Title VII." [D.E. 23 at ¶¶ 30, 85, 140]

These allegations, recited verbatim in each count for discrimination - including the counts  for discrimination based on gender and national origin - are entirely conclusory. To survive the motion

---

[3] Plaintiff cites to *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 668-69 (1987) to argue that a union can still be held liable for discrimination even though "there was no suggestion [] that the [defendant] held any racial animus against or denigrated blacks generally." While the Court agrees that a showing of racial animus specific to the defendant is not necessary to succeed in a discrimination claim based on a failure to grieve, the facts in *Goodman* make it clear that the defendants purposefully and deliberately "categorized racial grievances as unworthy of pursuit and, while pursuing thousands of other legitimate grievances, ignored racial discrimination claims on behalf of blacks, knowing that the employer was discriminating in violation of the contract." Therefore, in *Goodman*, Plaintiff had produced sufficient evidence to show a systematic "policy of refusing to file grievable racial discrimination claims however strong they might be and however sure [defendants' agent] was that the employer was discriminating against blacks." *Id.* at 669. Plaintiff Henderson has not alleged a knowing, systematic policy of refusing to grieve for effectively *all* race-based claims. Furthermore, Plaintiff concedes that the PBA did in fact file a grievance, based on the County's alleged failure to promote, prior to the expiration of the 2009 List.

to dismiss, Plaintiff must provide factual support that not only suggests discrimination by the PBA on the basis of race, but *intentional* discrimination by the PBA based on race. *Davis*, 516 F.3d at 974 (emphasis added).

The only factual allegation set forth by Plaintiff in her Amended Complaint that appears to have any sort of direct, racial nexus is the comment made by PBA attorney Simone Lopez that "she would not fight to get plaintiff promoted 'just because' plaintiff was the 'highest ranking black female.'" [D.E. 23 at ¶¶ 29, 84, 139]. As a threshold matter, the Court is dubious that this statement evidences any sort of *intentional* discrimination on the part of the PBA against Plaintiff, as a plain reading of the statement suggests that Ms. Lopez was informing Plaintiff that the fact she was the highest ranking black female would not, by itself, warrant special consideration. Furthermore, even viewing the statement and the surrounding allegations in the light most favorable to Plaintiff, the Amended Complaint combines this at best ambiguous comment with the above conclusory allegations to state that the PBA intentionally discriminated against Plaintiff. Without supporting factual allegations to suggest intentional discriminatory acts based on race by the PBA, Plaintiff's claims for race discrimination must be dismissed. *See Wallace v. Teledyne Continental Motors*, 138 Fed. Appx. 139, 145 (11th Cir. 2005) (finding plaintiff's claims for discrimination based on failure to grieve insufficient where "Plaintiff has adduced no facts showing that the Union's refusal to pursue her grievances [] was based on race or gender"); *Henderson v. JP Morgan Chase Bank, N.A.*, 436 Fed. Appx. 935, 938 (11th Cir. 2011) (affirming dismissal of claims due to "insufficient" and "conclusory" allegations, finding nothing in complaint suggested the defendant

"discriminated against [Plaintiff] based on her race").[4] Because Plaintiff has failed to state a claim for discrimination based on race against the PBA, the Court will not address whether the PBA has produced a legitimate, nondiscriminatory reason for the alleged discriminatory actions.

Accordingly, Defendant's Motion to Dismiss is granted as to Counts I, V and IX for race discrimination, and Plaintiff is granted leave to amend by July 23, 2014.

### ii. Plaintiff Has Failed to Sufficiently Plead the Claims for Discrimination Based on Gender (Counts II and VI) and National Origin (Counts III and VII) Against The PBA.

Consistent with the analysis above, Plaintiff has failed to allege a prima facie discrimination claim on the basis of gender or national origin. Plaintiff is a female and of Haitian descent, and therefore a member of a protected class for each claim. With respect to the second and fourth elements of a prima facie discrimination claim, Plaintiff sufficiently alleges she was subject to an adverse employment action committed by the PBA, and that she was qualified for the promotion due to her placement on the 2009 Promotion List.

However, Plaintiff has similarly failed to satisfy the third element regarding whether the PBA has treated similarly situated employees who are not members of the plaintiff's class more favorably. With respect to the three Hispanic males promoted under the PBA's settlement with Miami-Dade County, Plaintiff has not alleged how each is "nearly identical" to the plaintiff, or how they are

---

[4] *See also Booth v. Pasco County, Fla.*, 2010 WL 27572, at *8 (M.D. Fla. July 30, 2010) (dismissing claims for discrimination, finding "[a]lthough the Amended Complaint sets forth facts that the Union did not assist Booth with his grievance, there are no allegations to establish that this failure was *based on* Booth's race or national origin.") (emphasis in original); *Dulaney v. Miami-Dade County*, 785 F. Supp. 2d 1343, 1356 (S.D. Fla. 2011) (granting summary judgment due to insufficient evidence that "the Union purposefully or deliberately acquiesced in any discriminatory conduct"); *Melton v. National Dairy LLC*, 705 F. Supp. 2d 1303, 1328-29 (M.D. Ala. 2010) (granting summary judgment, noting "[Plaintiff] focuses on the Union's failure to take certain actions - i.e. pursue certain grievances, refused to arbitrate, did not contact [Plaintiff's] witnesses and his arbitration - but never establishes a racial nexus in its actions").

similarly-situated "in all relevant aspects," other than the mere fact that these three individuals were sergeants placed on the 2009 List. *See Davis,* 516 F.3d at 974; *Scribner,* 2011 WL 2746813 at *4-5; *Veale,* 2013 WL 5703577 at *4-5; *Welch,* 304 Fed. Appx. at 837.

Plaintiff's conclusory assertions that Hispanic males on the 2009 List were ultimately promoted to the exclusion of African-American women of Haitian descent, without factual support as to how each was similarly-situated in all relevant aspects to the Plaintiff, are insufficient. The same reasoning applies to Plaintiff's reference to Mr. Amado Ojeda. [D.E. 23 at ¶ 25]. For these reasons alone, Plaintiff's claims for discrimination based on race are dismissed, and Plaintiff is granted leave to amend.

Moreover, for precisely the same reasons listed above, Plaintiff has failed to make sufficient factual allegations, taken as true, to suggest intentional gender or national origin discrimination. *Davis,* 516 F.3d at 974. The Amended Complaint is riddled with conclusory allegations of discrimination, along with a single statement made by PBA counsel Simone Lopez that "she would not fight to get plaintiff promoted 'just because' plaintiff was the 'highest ranking black female.'" [D.E. 23 at ¶¶ 29, 84, 139]. When viewing the ambiguous statement and the conclusory allegations in the light most favorable to Plaintiff, the Amended Complaint does not allege a claim for discrimination on the basis of gender or national origin. This is particularly true with respect to the claims for national origin, as Simone Lopez's statement does not even implicate Plaintiff's protected status as an individual of Haitian descent. As with the claims for discrimination based on race, the Court need not address whether the PBA has produced a legitimate, nondiscriminatory reason for the alleged discriminatory actions.

For these reasons, Defendant's Motion to Dismiss is granted as to Counts II, III, VI, and VII for gender and national original discrimination, and Plaintiff is granted leave to amend.

**C.  The Motion to Dismiss Plaintiff's Retaliation Claims (Counts IV, VIII, and X) is Denied.**

Defendant argues that Plaintiff has failed to state a claim for retaliation in violation of Title VII, 42 U.S.C. § 2000, the Florida Civil Rights Act, Fla. Stat. § 760.01(1), and 42 U.S.C. § 1981.

Just as a labor union may be subject to liability for discrimination on the basis of race, gender or national origin, a labor union may be liable for retaliation under Title VII, the Florida Civil Rights Act or § 1981. *E.g., Booth v. Pasco County, Fla.*, 2014 WL 3031177 (11th Cir. July 3, 2014); *Charles v. AFSCME Local 121*, 2010 WL 2026686 (S.D. Fla. May 21, 2010); *Booth*, 829 F. Supp. 2d at 1201-02. Moreover, the elements of a prima facie case and the analytical framework for retaliation claims made under Title VII, the Florida Civil Rights Act, and § 1981, are the same. *E.g., Gray v. City of Jacksonville, Fla.*, 492 Fed. Appx. 1, 3 (11th Cir. 2012) (noting plaintiff's claims of retaliation "under all three statutory frameworks (Title VII, § 1981, and the FCRA) must stand - or fall - together"). The Court therefore will analyze the claims together.

Similar to Plaintiff's race, gender and national origin discrimination claims, Plaintiff has not alleged direct evidence of retaliation. Therefore, the Court will analyze those claims on the basis of indirect, circumstantial evidence. Where the plaintiff seeks to prove retaliation through indirect, circumstantial evidence, she must plead the following prima facie elements: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *Crawford v. Carroll*, 529 F.3d 961, 980 (11th Cir. 2008). If the plaintiff satisfies those elements, the burden then shifts to the employer to produce a legitimate, nondiscriminatory reason for the adverse action. *Brown v. Alabama Dept. Of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010).

First, Plaintiff's filing of her original and amended charges with the Equal Employment Opportunity Commission implicates protected "participation clause" activity under Title VII . *E.g.*,

*E.E.O.C. v. Total System Services, Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000).  Second, to meet the "adverse employment action" element, Plaintiff must show that she has "suffered an adverse employment action such that a reasonable employee would have found the challenged action materially adverse" which "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington Northern & Santa Fe Railway Co.*, 548 U.S. 53, 68 (2006); *Booth*, 829 F. Supp. 2d at 1191.

The Eleventh Circuit recently noted that the *Burlington* "adverse employment action" standard for retaliation cases was significantly more liberal than the standard previously applied in this Circuit, stating that Burlington "strongly suggests that it is for a jury to decide whether anything more than the most petty and trivial actions against an employee should be considered 'materially adverse' to him and thus constitute adverse employment actions." *Crawford*, 529 F.3d at 974, n.13; *Booth*, 829 F. Supp. 2d at 1191.  Moreover, "while some adverse actions may not individually rise to the level of an adverse employment action under Title VII, the Court may consider adverse actions collectively to determine whether the totality of the alleged actions rise to the a level of substantiality to constitute unlawful retaliation." *Booth*, 829 F. Supp. 2d at 1191 (quoting *Cote v. Shinseki*, 2009 WL 1537901, at *5 (M.D. Fla. June 2, 2009); *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002).

The Court finds that Plaintiff's allegations, taken as true, demonstrate that she has suffered an adverse employment action.  Plaintiff alleges that one month after she filed her original charge of discrimination against the PBA in October 2012, she emailed PBA President John Rivera to complain "that the handling of the 2009 List promotional process had been discriminatory toward black females and that PBA attorneys had ignored her concerns and grievances," and that "the [PBA] had supported

-19-

discriminatory practices by MDPD," to which "Mr. Rivera never responded."[5] She further alleges that four days later, the PBA entered into a settlement agreement with the County whereby three Hispanic males were promoted to lieutenant and the 2011 List extended one year, such that Plaintiff "not only would not be promoted," but "would have to wait an additional year before she will have an opportunity to again qualify for promotion." Finally, Plaintiff alleges that on May 14, 2013, after emailing PBA President John Rivera and executive board members to ask for "assistance and legal representation" during an upcoming meeting with the Director of the Miami-Dade Police Department - at which time she would "present evidence to the [PBA] and Director Patterson regarding how the promotional process was handled during 2010 and 2011" - PBA attorney Mr. Axelrad "denied her request for help" and did not "review[] Plaintiff's evidence or speak[] with the Plaintiff." As a result of the alleged failure to assist Plaintiff or offer representation, Plaintiff alleges she was "forced to meet with Director Patterson on June 19, 2013 with no assistance or representation."

These allegations, viewed under the liberal *Burlington* standard, demonstrate an "adverse employment action." A reasonable employee would be dissuaded from making or supporting a charge of discrimination if, as a result of doing so, the PBA entered into a settlement resulting in the employee's inability to be promoted at that time and for at least another year. Similarly, a reasonable employee would be dissuaded from making or supporting a charge of discrimination if, as a result of doing so, the union president, union counsel, or other union officials refused to consider evidence of alleged discrimination or refused to assist or represent the employee in meetings regarding promotional concerns.

Finally, at the pleading stage there appears to be a sufficient causal link between Plaintiff's

---

[5] Whether the PBA's failure to address or respond to Plaintiff's concerns, both in November 2012 and at other times as alleged by Plaintiff, indeed took place, or alternatively whether there is sufficient evidence to prove it occurred, is an issue for another day at either the summary judgment or trial phase.

protected activity and the adverse employment action. The Eleventh Circuit broadly construes the causal link such that "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *E.g.*, *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). A plaintiff satisfies this element if "[s]he provides sufficient evidence" of knowledge of the protected activity and "that there was a close temporal proximity between this awareness and the adverse [] action." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (citations omitted). The Eleventh Circuit has held that a period as much as one month between the protected activity and the adverse action is not too protracted. *Id., citing Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1457 (11th Cir. 1998).

The protected activity and the adverse employment action are certainly not "completely unrelated," as each action dealt squarely with the issue of promoting police officers. Next, Plaintiff has alleged sufficient evidence at this stage of the PBA's knowledge of her protected activity, as Plaintiff alleges she named the PBA as respondent in both the original and amended charges of discrimination, as well as directly contacting PBA officials, including the president, to discuss the concerns contained in the charges. Lastly, certain of the alleged adverse employment actions, including PBA President Rivera's and other PBA officials' "failure to address or even respond to plaintiff's concerns," as well as entering into the settlement agreement with Miami-Dade County resulting in Plaintiff's inability to receive a promotion, occurred, respectively, on November 26, 2012 and November 30, 2010, roughly one month after Plaintiff filed her original charge with the Equal Employment Opportunity Commission. The Court finds that this period satisfies the "temporal proximity" element of a causal link. *Wideman*, 141 F.3d at 1457 (finding one-month period between protected activity and adverse action sufficient to demonstrate causation); *Donnellon*

*v. Fruehauf Corporation*, 794 F.2d 598, 601 (11th Cir. 1986) (finding one-month period sufficient).[6]

Plaintiff, therefore, has satisfied the prima facie elements of a retaliation claim under Title VII, the Florida Civil Rights Act, and § 1981. While Defendant has arguably produced a legitimate, nondiscriminatory reason for the adverse action of entering into a settlement with Miami-Dade County, the lack of any such reason for its alleged refusal to consider evidence or assist the Plaintiff allows Plaintiff's retaliation claims to proceed to discovery. For these reasons, the Motion to Dismiss as to Counts IV, VII and X is DENIED.

### Conclusion

Accordingly, Defendant's Motion to Dismiss is granted in part and denied in part. Plaintiff has failed to state a claim for discrimination based on race, sex or national origin against the PBA pursuant to Title VII, the Florida Civil Rights Act, or § 1981. Plaintiff's claims for retaliation under these statutes, however, are sufficiently pled to survive the Motion to Dismiss. Therefore, it is

---

[6] The same reasoning applies to the period between Plaintiff's May 14, 2013 actions (contacting PBA President Rivera and PBA executive board members to ask for assistance and representation during an upcoming meeting with Director Patterson of the Miami-Dade Police Department to discuss her concerns), and the PBA's alleged adverse actions (PBA counsel's denial of the request for assistance on May 14, 2013, and the PBA's failure to attend the meeting with Director Patterson on June 19, 2013, thus causing Plaintiff to meet with the Miami-Dade County representative with no assistance). *See Booth*, 829 F. Supp. 2d at 1191 ("the Court may consider adverse actions collectively to determine whether the totality of the alleged actions rise to the a level of substantiality to constitute unlawful retaliation.") (quoting *Cote v. Shinseki*, 2009 WL 1537901, at *5 (M.D. Fla. June 2, 2009)).

**ADJUDGED** that:

1. Defendant's Motion to Dismiss is GRANTED as to Counts I, II, III, V, VI, VII and IX. The claims are dismissed without prejudice, and Plaintiff is granted leave to amend. A Third Amended Complaint must be filed no later than **July 24, 2014**.

2. Defendant's Motion to Dismiss is DENIED as to Counts IV, VIII and X. Defendant shall answer the remaining claims, and to any amended claims in a Third Amended Complaint, by **August 11, 2014**.

3. As set forth in the Court's Scheduling Order, issued simultaneously with the instant Order, this case is set for trial for the two-week period commencing **February 23, 2015**.

DONE AND ORDERED in Chambers at Miami, Florida, this 18th day of July, 2014.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record

-23-